EDWARD G. HAJENGA, APPELLEE, V.
CHIN G. HAJENGA, APPELLANT.

601 N.W. 2d 528

Filed October 15, 1999. No. S-98-326.

J. Bruce Teichman and Sam Houston, of Feller & Teichman, P.C., for appellant.

Steven M. Watson, P.C., of Marks Clare & Richards, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Chin G. Hajenga appeals from the decree of dissolution of marriage entered in the district court for Douglas County, Nebraska. Chin claims inadequacy in the amount of child support which Edward G. Hajenga was ordered to pay and error in dividing the marital assets. On our own motion, we removed the matter to this court pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## BACKGROUND

Edward and Chin were married on April 6, 1987. During the course of their marriage, the couple had three children. In April 1996, Edward moved out of the family residence. A month later, Edward moved in with Robin Taylor, a mother with custody of three minor children. Edward and Robin subsequently had a child of their own. Edward and Robin's child, as well as Robin's other three children, reside with Edward and Robin.

On April 29, 1996, Edward filed a petition of dissolution of marriage against Chin in the district court. The petition requested that the trial court equitably distribute the property and debts of the parties; award Chin the temporary and permanent care, custody, and control of the three minor children of the parties; and establish a schedule of visitation rights and child support payments. At trial, Edward asked the trial court, in

determining his child support obligation, to take into consideration the fact that he has a fourth child that he supports. In regard to the property and debts of the parties, Edward testified that after he moved out of the family residence, he had to borrow money from his mother and that he had to pay this money back to his mother.

The trial court entered a decree of dissolution of marriage awarding Chin the care, custody, and control of the minor children and found that the Nebraska Child Support Guidelines did not apply in this case. The trial court ordered Edward to pay $630 per month in child support. The trial court also distributed the property and debts of the parties and in doing so, treated the money Edward owed his mother as a marital debt and used it in determining the division of the parties' property and debts.

Chin filed a motion for new trial, which was overruled. Chin timely appealed.

## ASSIGNMENTS OF ERROR

Chin assigns, renumbered and restated, that the trial court erred in (1) deviating from the guidelines; (2) not stating that one or both parties had produced sufficient evidence to rebut the presumption that the guidelines should be applied and in not stating the specific grounds for the deviation from the guidelines or, alternatively, in not completing a "Deviations to Child Support Guidelines Worksheet 5"; (3) not stating the amount of support that would have been required under the guidelines absent the deviation; (4) not specifying in its order the amount of child support owed by Edward when one or more children no longer qualify for child support; and (5) making a determination that Edward owed his mother $20,000 to $25,000 and that this was a marital debt to be included in calculating an equitable division of the parties' property and debts.

## SCOPE OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). In a review de

novo on the record, we reappraise the evidence as presented by the record and reach our own independent conclusions with respect to the matters at issue. *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997); *Thiltges v. Thiltges, supra.* When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witness and accepted one version of the facts rather than another. *Thiltges v. Thiltges, supra*; *Jirkovsky v. Jirkovsky, supra.*

## ANALYSIS
### CHILD SUPPORT

Chin first claims that the trial court erred in deviating from the guidelines. Chin further argues that because the trial court deviated from the guidelines, paragraph C of the guidelines required the trial court to state in the decree that it found that one or both parties had produced sufficient evidence to rebut the presumption that the guidelines should be applied and to state the reason the trial court deviated from the guidelines or that alternatively, the trial court should have completed worksheet 5. In addition, Chin alleges that the decree should have stated the amount of support that would have been required under the guidelines absent the deviation.

Paragraph C of the guidelines states:

> The child support guidelines shall be applied as a rebuttable presumption. All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. All stipulated agreements for child support must be reviewed against the guidelines and, if a deviation exists and is approved by the court, specific findings giving the reason for the deviation must be made. *Findings must state the amount of support that would have been required under the guidelines and include a justification of why the order varies from the guidelines.* Deviations must take into consideration the best interests of the child. *In the event of a deviation, the reason for the deviation shall be contained in the findings portion of the decree or order; or worksheet*

*5 should be completed by the court and filed in the court file.* Deviations from the guidelines are permissible under the following circumstances:

1. when there are extraordinary medical costs of either parent or child;

2. when special needs of a disabled child exist;

3. if total net income exceeds $10,000 monthly, child support for amounts in excess of $10,000 monthly may be more but shall not be less than the amount which would be computed using the $10,000 monthly income unless other permissible deviations exist;

4. for juveniles placed in foster care; or

5. whenever the application of the guidelines in an individual case would be unjust or inappropriate.

All orders for child support, including modifications, must include a basic income and support calculation worksheet 1, and if used, worksheet 2 or 3.

(Emphasis supplied.)

█ We interpret paragraph C of the guidelines to require that when child support orders deviate from the guidelines, a trial court must state the reasons for the deviation in the decree or order or that alternatively, it must complete worksheet 5 and file it in the court file. While paragraph C provides that either stating the reason for the deviation in the decree or order or completing worksheet 5 is sufficient, we encourage trial courts to do both. In addition, paragraph C requires that the decree or order state the amount of support that would have been required under the guidelines absent the deviation.

In the present case, the trial court's decree states that the guidelines do not apply in the instant case, but fails to state the reason for the deviation, and the trial court did not complete a worksheet 5. The trial court also failed to state the amount of support that Edward would have been required to pay under the guidelines.

The most logical explanation for the trial court's deviation is that it must have considered the support Edward provides for the child he fathered with Robin. However, even in cases such as this where a possible reason for the deviation can be discerned from the record, the reason still remains a guess or is speculation on

our part. We will not speculate as to why a trial court did what it did. While we refuse to come to any conclusion as to why the trial court in the instant case deviated from the guidelines, we will discuss whether a trial court can consider a party's subsequent child in determining child support for purposes of remand.

In general, child support payments should be set according to the guidelines established pursuant to Neb. Rev. Stat. § 42-364.16 (Reissue 1998). *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991). Section 42-364.16 provides that child support shall be established in accordance with the guidelines unless a court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order. *Knippelmier v. Knippelmier, supra.* Thus, the trial court may deviate from the guidelines in an individual case if the application of the guidelines would be unjust or inappropriate.

The guidelines are not to be applied with blind rigidity:

> [A] trial judge does not satisfy his duty to equitably determine child support by blindly following suggested guidelines. The Nebraska Child Support Guidelines are, by their very nature, simply guidelines. . . . The court may deviate from the guidelines where one or both parties have provided sufficient evidence to rebut the presumption that the guidelines should be applied. Thus, the guidelines offer flexibility and guidance, with the understanding that not every child support scenario will fit neatly into the calculation structure.

*Czaplewski v. Czaplewski*, 240 Neb. 629, 631, 483 N.W.2d 751, 752 (1992).

In determining the amount of a child support award, a trial court must consider the status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support of the children. *Knippelmier v. Knippelmier, supra; Formanack v. Formanack*, 234 Neb. 325, 451 N.W.2d 250 (1990).

This court dealt with the issue of a parent's financial obligation to more than one family in *Czaplewski v. Czaplewski, supra.* The mother in *Czaplewski* contended that the trial court ought not have considered the fact that her ex-husband now has

848

another child from a subsequent marriage to support. The court noted that the guidelines' worksheet 1, the basic net income and support calculation, provides as a deduction that amount in " '[c]hild support previously ordered for children not of this marriage.' " *Id.* at 631, 238 N.W.2d at 752. The court then held that in keeping with the spirit of the guidelines, the trial court was correct in factoring into the child support calculations the father's offspring of his subsequent marriage. *Czaplewski v. Czaplewski, supra.*

 Based on *Czaplewski v. Czaplewski, supra*, it may be appropriate for a trial court to consider subsequent children of a party in determining child support. We reiterate, however, that when a trial court deviates from the guidelines, it must set forth the reasons in the order or complete a worksheet 5. The party requesting the deviation from the Nebraska Child Support Guidelines based upon an obligation to support offspring of a subsequent relationship bears the burden of providing evidence regarding the obligation, including the income of the other parent of the child of the subsequent relationship.

We note that a worksheet 1 needs to be prepared using the incomes of the parties in the case at hand, as required under paragraph C of the guidelines. In the present case, worksheet 1 was not prepared with the decree.

Chin next alleges that the trial court neglected to make a finding of the amount of child support to be paid by Edward when one or more children no longer qualify for child support.

Paragraph H of the guidelines state:

If there is more than one child, the court's order should specify the amount of child support due for the children, with the amount recalculated and reduced as the obligation to support terminates for each child. The amount due for each possibility should be calculated separately from table 1. . . . The order should direct that child support continue only until each child reaches majority under Nebraska law, becomes emancipated, becomes self-supporting, marries, or dies, or until further order of the court.

In the decree, the trial court ordered:

The Child Support Guidelines do not apply, therefore, the Petitioner shall pay child support for the benefit of the

three minor children of the parties in the amount of $630 per month commencing on the 1st day of February, 1998, and continuing thereafter with a like amount until the first of the following events occur as to any child: death, marriage, emancipation, joining the Armed Forces, reaching the age of majority under the laws of the State of Nebraska, or further Order of the Court.

This language does not meet the requirements of paragraph H, as it does not recalculate and reduce the amount of support due as the obligation to support terminates for each child.

## PROPERTY DIVISION

Chin also claims that the trial court did not equitably divide the property and debts of the parties because the trial court took into account debts that Edward owed his mother. Chin contends there was no credible evidence presented of the payments made to Edward by his mother or that the money allegedly received had to be paid back.

Generally, the division of property in a dissolution case is based on equitable principles, and its purpose is to divide the marital assets equitably. *Black v. Black*, 221 Neb. 533, 378 N.W.2d 849 (1985). The ultimate test for determining the appropriateness of the division of property is reasonableness as determined by the facts of each case. *Venter v. Venter*, 249 Neb. 712, 545 N.W.2d 431 (1996); *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995). The division of property is not subject to a precise mathematical formula. *Thiltges v. Thiltges, supra*; *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994).

In dividing property upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties; (2) the duration of the marriage; (3) the history of contributions to the marriage, including contributions to the care and education of the children and interruption of personal careers or educational opportunities; and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party, the polestar being fairness and reasonableness as determined by the facts of each case. Neb. Rev. Stat. § 42-365

(Reissue 1998); *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998); *Reichert v. Reichert, supra.*

At the dissolution hearing, Edward testified that he had borrowed money from his mother in order to pay off some debts. Edward also testified that he was required to pay back to his mother the money he had borrowed. Following this testimony, Edward's counsel offered into evidence an exhibit showing a schedule of $34,809.88 Edward had borrowed from his mother from April 1996 to September 1997. No objection was made by Chin's counsel, and the exhibit was received. Chin's counsel did not question Edward about the validity of the loans, nor did he offer any evidence to rebut that the debt was a valid marital debt. At a later point in Edward's testimony, Edward's attorney asked him how much money he must pay back to his mother, and he responded, "It's got to be over 20,000 or 25." On cross-examination, Edward was also asked how much he had borrowed from his mother since the separation in April 1996, and he responded, "[I]t's in the mid-twenties, I am sure."

The trial court found that "[Edward] allegedly owes his mother approximately $20,000 to $25,000 for living expenses advanced during the pendency of this litigation which he shall pay his mother and he shall indemnify and hold [Chin] harmless thereon." Under a de novo review, when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witness and accepted one version of the facts rather than another. *Thiltges v. Thiltges, supra*; *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). We conclude that the trial court did not abuse its discretion in taking into account money Edward owed his mother when it divided the property and debts of the parties.

## VISITATION

Neither party assigned or argued that there was error in the visitation portion of the decree. Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *Fiscel v. Beach*, 254 Neb. 678, 578 N.W.2d 52 (1998); *Miller v. Brunswick*, 253 Neb. 141, 571 N.W.2d 245 (1997). Plain error exists where there is an error, plainly evident

from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Fiscel v. Beach, supra*; *Miller v. Brunswick, supra.*

The trial court ordered that Edward's visitation would be increased at the discretion of the family therapist. The trial court specifically ordered:

> [Edward] shall have visitation with the minor children of the parties on every other Saturday from noon to 5:00 p.m. This time shall be extended at the recommendation of Dr. Sharon Cannon. . . .

> [Edward's] visitation shall increase on Saturday to eight (8) hours as determined by Dr. Cannon. [Edward] shall have standard alternate weekend overnight visitation with the three minor children upon the recommendation of Dr. Sharon Cannon.

In *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), we held that a trial court's order placing in a psychologist the authority to effectively determine visitation and to control the extent and time of such visitation was not the intent of the law and was an unlawful delegation of the trial court's duty. We concluded that such delegation could result in the denial of proper visitation rights of the noncustodial parent. We further held:

> The responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties. *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978). The reasoning in that case can be extended to third parties without violating the principle involved.

*Deacon v. Deacon*, 207 Neb. at 201, 297 N.W.2d at 762.

We find that the trial court wrongfully abdicated its duty by giving the therapist authority to adjust Edward's visitation, and thereby committed plain error.

## CONCLUSION

The trial court erred in deviating from the guidelines and not stating the reasons for the deviation or, alternatively, in not completing a worksheet 5. The trial court also erred in not stating the amount of child support that Edward would have been required to pay under the guidelines and in not specifying the amount of child support owed by Edward when one or more of the children no longer qualified for child support. The trial court did not err in determining that the money Edward owed his mother was a marital debt. The trial court further erred in allowing Edward's visitation to be determined by a therapist.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.