TERESA R. KRAUSE, APPELLEE, V.
RALPH W. KRAUSE, APPELLANT.

619 N.W.2d 611

Filed December 5, 2000. No. A-99-1171.

William R. Reinsch, of Reinsch & Slattery, P.C., for appellant.

Allen Fankhauser, of Fankhauser, Nelsen & Werts, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Ralph W. Krause appeals from the district court's order in which the court reduced his alimony obligation to Teresa R. Krause and increased his child support obligation for the four children born of that marriage. For the reasons set forth below, we affirm.

## BACKGROUND

Ralph and Teresa were divorced on May 4, 1993. Four children were born of that marriage: Nicholas, born January 13, 1982; Kevin, born August 12, 1983; Todd, born August 2, 1985; and Adam, born September 24, 1987. Custody of the children was awarded to Teresa, and Ralph was ordered to pay monthly child support in the amount of $1,254 for four children, $1,114 for three children, $873 for two children, and $553 for one child.

With regard to alimony, the decree further provided:

[G]iven the length of the marriage, the disparity of the income of the parties and the need of [Teresa] for support, [Ralph] should pay [Teresa] by way of alimony the following amounts:

> a. The sum of $325 per month for a period of eight years, the first such payment being due May 1, 1993, and ... commencing May 1, 2001, $600 per month for a period of seven years . . . .

Ralph subsequently remarried. One child has resulted from that marriage, Benjamin, born June 13, 1995.

On or about April 20, 1997, Teresa's aunt died, leaving Teresa a devise found by the trial court to consist of $173,172.23 in probate property "as well as $42,153.96 joint property." That finding is not challenged on appeal. Teresa also received commercial property in Bedford, Iowa, and a 1997 Buick automobile. The trial court further found that the commercial property "has not been shown to generate income in excess of taxes and maintenance" and that the automobile was for personal use only. Those findings, again, are not challenged on appeal.

On or about September 11, 1998, Ralph filed a petition seeking to modify the dissolution decree by (1) providing for joint custody of the children, (2) recalculating the parties' respective child support obligations, and (3) terminating Ralph's alimony obligation. The parties subsequently resolved the custody issue pursuant to a stipulation approved by the court.

A hearing was held on August 10, 1999, on the issues of child support and alimony. In an order dated September 23, 1999, the district court found that material changes of circumstances had occurred, meriting a decrease in Ralph's alimony and an increase in his child support obligation. With regard to alimony, the court found that Teresa's inheritance resulted in an increase in her earning capacity and accordingly modified the alimony award to provide that Ralph would pay $215 per month from October 1, 1999, through April 2001, and would then pay $400 per month for the next 7 years. With regard to Ralph's child support obligation, the court increased Ralph's monthly child support obligation to $1,650 for four children, $1,524 for three children, $1,274 for two children, and $873 for one child.

Ralph timely filed the instant notice of appeal on October 6, 1999.

### ASSIGNMENTS OF ERROR
Ralph makes two assignments of error: The district court erred in (1) failing to terminate his alimony altogether and (2)

computing his child support obligation pursuant to the child support guidelines.

## STANDARD OF REVIEW

■ Modification of alimony and child support is entrusted to the discretion of the trial court and will be reviewed de novo on the record for abuse of discretion. See *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

■ In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the issues. If the evidence as presented by the record is in conflict, an appellate court considers, and may give weight to, the fact that the trial court had the opportunity to hear and observe the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Alimony.*

Ralph first asserts that the trial court abused its discretion in reducing his alimony obligation, arguing that the appropriate response to Teresa's inheritance is to abrogate his alimony altogether. According to Ralph, that inheritance has so substantially changed the relative economic circumstances of the parties "as to effectively eliminate the purpose for which the alimony was originally awarded and as contemplated in *Neb. Rev. Stat.* § 42-365." Brief for appellant at 15.

■ Generally, an order for alimony may be revoked or modified for good cause shown, unless amounts have accrued prior to the date of service of process on a petition to modify. Neb. Rev. Stat. § 42-365 (Reissue 1998). It is uncontroverted that Ralph has remained current in his alimony obligation. Good cause is demonstrated by a material change in circumstances which was not within the contemplation of the parties at the time of the decree or did not result from the mere passage of time. *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992). Whether good cause exists depends upon the circumstances of each case. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). The determination of good cause necessary for modification of a dissolution decree is a matter of discretion

for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. *Id.* A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Davidson v. Davidson,* 254 Neb. 357, 576 N.W.2d 779 (1998).

 Under Nebraska law, a court is to consider four factors in setting alimony: (1) the circumstances of the parties; (2) the duration of the marriage; (3) the history of contributions to the marriage, including contributions to the care and education of the children and interruption of personal careers or educational opportunities; and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. § 42-365; *Davidson v. Davidson,* 254 Neb. 656, 578 N.W.2d 848 (1998). A court should also consider, in addition to the specific criteria listed in § 42-365, the income and earning capacity of each party as well as the general equities of each situation. *Ainslie v. Ainslie,* 249 Neb. 656, 545 N.W.2d 90 (1996). Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Kalkowski v. Kalkowski,* 258 Neb. 1035, 607 N.W.2d 517 (2000).

In its order of modification, the trial court explained its reasoning as follows:

[T]he evidence supports that a disparity of income between the parties continues to exist. However, [Teresa's] need for support has changed based upon her recent inheritance.

The Court finds that good cause has been shown meriting modification of the alimony award, namely the increased earning power of [Teresa] following her inheritance.

Making such a finding, the Court notes that the award of alimony is not to equalize the disposable income of the parties. Had [Teresa] had an additional $200,000 of earning assets at her disposal at the time of the entry of the original decree, the award of alimony would have been impacted. Exactly how much is difficult to determine. The Court notes that the alimony was to be terminable upon the death of either party or the remarriage of [Teresa] which indicates to this Court that the original decree was based

upon meeting a perceived <u>need</u> of [Teresa] and not an award of an <u>earned</u> benefit.

(Emphasis in original.) The court accordingly adjusted Ralph's alimony obligation for the period covering October 1, 1999, through April 2001, lowering it from $325 to $215 per month, and his obligation for the following 7 years was reduced from $600 to $400 per month.

In reviewing an initial award of alimony, "an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result." *Kelly v. Kelly*, 246 Neb. 55, 65, 516 N.W.2d 612, 618 (1994). We believe the same principle applies in the case of a modification of an alimony award.

Teresa testified that she used some $33,000 from the inheritance to pay off the mortgage on her house, her credit cards, and a loan from the Bank of Peru that had been used to provide braces for the boys. She testified that she purchased a couch and a computer with the funds and that she drives the Buick automobile. She further testified that her lifestyle had not changed significantly in any other way.

Teresa further testified that she had purchased a $50,000 annuity, which would provide her with funds at the age of 60. Finally, she testified that she had purchased $80,000 worth of certificates of deposit (CD's) in the names and under the Social Security numbers of her sons and that the interest from those CD's would be compounded and added back into the CD's.

In sum, the trial court found that Teresa's financial status had improved because of the inheritance, albeit in an amount that was difficult to determine with precision. The court accordingly reduced Ralph's alimony obligation by approximately one-third to account for the change in Teresa's financial status. We do not find this modification to be untenable in light of this record, and we, accordingly, affirm.

*Child Support.*

Ralph next argues that the trial court wrongly computed his modified child support obligation. Specifically, while Ralph concedes that the trial court took into account his obligation to

support his child from his subsequent marriage, he contends that the court erred in determining the figure at which it arrived. We disagree.

The general rule in cases involving a parent's child support obligation to multiple families is that there is no abuse of discretion so long as the trial court has taken the additional children from a subsequent marriage into account. *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998). Moreover, the calculations are interdependent, that is, the calculation of parental obligation to the children from the first marriage must take into consideration the obligation to the children from the second marriage. *Id.*

In the instant case, the trial court has attached its child support worksheets to the order of modification. Ralph's obligation to the child of his second marriage was clearly taken into account, and the resulting obligation to the children of his first marriage is consistent with the guidelines. We specifically find that Ralph's suggestion that this court attribute higher income to Teresa due to increased income from inherited rental property is not supported by the record. Having found no abuse of discretion by the trial court, we accordingly affirm.

## CONCLUSION

For the reasons set forth above, the order of the trial court modifying the original divorce decree is affirmed in all respects.

AFFIRMED.

IRWIN, Chief Judge, concurring.

I concur with the majority's decision in this case, but write separately to address the issue of child support and the interdependent support calculation. Since our decision in *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998), it is apparent that there has been some uncertainty concerning the computing of the interdependent support calculation because we did not specify a particular procedure for doing so.

As the majority notes, the opinion in *Prochaska, supra,* was premised on the notion that in cases involving a parent's child support obligation to multiple families, the trial court should consider the parent's obligation to support additional children from a subsequent marriage when determining the parent's sup-

port obligation for children of the earlier marriage. See *Prochaska, supra.*

Since *Prochaska,* we have seen a variety of valid methods of computing child support interdependently. So long as the principles of *Prochaska* are satisfied, no one specific method or formula is mandated. In *Prochaska,* we noted that child support should be computed interdependently so that a benefit is not conferred on one family at the expense of another. It is within the discretion of the trial court to determine how that is done.

In the present case, the child support worksheets attached to the modification order indicate that the trial court considered Ralph's obligation to each family in arriving at the amount ordered as support for the children of his first marriage. The amount arrived at is not inconsistent with the guidelines, and because the court conducted a form of interdependent calculation, I find there is no abuse of discretion.

SIEVERS, Judge, concurring.

I write separately with respect to the matter of child support. How child support should be set when a noncustodial parent paying child support then remarries and has additional children is difficult. While I do not believe the result reached in the instant case is an abuse of discretion, this conclusion is not because I think the trial judge hit upon the "interdependent arithmetic" calculation referenced in this court's earlier opinion *Prochaska v. Prochaska,* 6 Neb. App. 302, 308, 573 N.W.2d 777, 781 (1998).

The *Prochaska* opinion did not define or illustrate the "interdependent arithmetic" calculation referenced in that opinion. To the extent that the term "interdependent arithmetic" implies a precise mathematical formula which can be used in all of these cases, I believe our use of that term is confusing to lawyers and trial judges. Absent further guidance from the Supreme Court, perhaps via an amendment to the child support guidelines, I believe the appropriate language and rule is that the problems presented in such cases require an "interdependent consideration" by the trial court of the parent's obligations to the children of his or her now dissolved marriage and the children resulting from a subsequent marriage so that both families are treated as

fairly as possible. The more information the trial courts provide as to how they make such interdependent considerations, the better the parties will understand the matter, and the more effective will be our review of how the two competing obligations were handled by the trial court.

In the case at hand, study of the record shows that the trial court interdependently considered the competing obligations to the two families and arrived at a fair and equitable resolution. Thus, I find no abuse of discretion and agree that its decision should be affirmed.